UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

REPORT AND RECOMMENDATION OF SPECIAL MASTER

-------------------------------------------------------- x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE CONFLICT ID NUMBERS:

1:26-MC-03792-BMC-JAM

259934 (HICKEY-FREEMAN CO. INC.), and
259936 (INTERNATIONAL WOMEN'S APPAREL, INC.).

-------------------------------------------------------- x

**Parties and Representatives**:

Victor Knox
Fair Harbor Capital LLC ("Fair Harbor")
P.O. Box 237037
New York, NY 10023
(212) 967-4035
vknox@fairharborcaptal.com
Representative of FHC

Louis Teplis
Manor Ventures ("Manor")
on behalf of W Diamond Group Corporation ("WDG")
2870 Peachtree Road, Suite 261
Atlanta, GA 30305
(404) 217-5496
Louis.teplis@manorcap.com
Representative of Manor Ventures

Rule 23(b)(3) Class Plaintiffs (the "Class")
Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

I. Background

Fair Harbor and Manor have both registered with the Class Administrator to claim a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*") arising out of the payment card transactions of the following two merchants, each identified by the name registered with the Class Administrator and the last four digits of its Taxpayer Identification Number ("TIN"): Hickey-Freeman Co. Inc. (TIN ending in 2438) ("HFC") and International Women's Apparel (TIN ending in 2494) ("IWA" or collectively with HFC, the "Two Merchants").[1] Fair Harbor contends that it owns the claims because it purchased them from the Two Merchants' successor in interest in 2014. Manor is a TPF and asserts that it is entitled to register the Two Merchants' claims because it entered into a service agreement with their corporate parent WDG in 2021.[2] For the reasons set forth below, I respectfully recommend that the Court direct the Class Administrator to process Fair Harbor's registration and withdraw Manor's. The record before me includes the following documents:

[1] Before submitting a claim to receive the settlement proceeds corresponding to the payment card transactions of a merchant member of the Rule 23(b)(3) Settlement Class (the "Class"), a party must first register that merchant's TIN with the Class Administrator. The registrant must provide proof that it is the owner (or authorized representative of the owner) of the claim corresponding to that merchant TIN. In the absence of supporting documentation, this requirement can also be satisfied by providing the Claimant ID and Control Number printed on the original prepopulated claim forms that were mailed to known class members. Once the registrant establishes such authority, the Class Administrator updates the registrant's status to "approved." If there is only one approved registrant for a given TIN, the registrant may submit a claim for that TIN. In cases where multiple parties have registered the same TIN, the Class Administrator designates the TIN as being in "conflict" and does not permit any registrant to submit a claim until the conflict is resolved.

[2] A TPF is a business that enters into agreements with merchants to register and prosecute their claims of settlement funds in exchange for a portion of the merchants' recovery. *See MDL 1720*, 2014 WL 4966072, at *4 (E.D.N.Y. Oct. 3, 2014) (describing "the business of third-party claims filing companies").

- Asset Purchase Agreement dated December 8, 2014, between Fair Harbor as purchaser and XMH Corp. 1 Liquidation Trust as "successor in interest to Hartmarx Corporation (the 'Main Debtor') and its affiliated debtors" as seller ("2014 APA");
- Manor Ventures Service Agreement dated September 9, 2021, between Manor and WDG ("2021 Manor Service Agreement");
- Emails dated August 18 and November 10, 2023 between Manor and the Class Administrator;
- A spreadsheet submitted with Manor's email dated November 10, 2023, listing entity names and the corresponding TINs including FHC and Hartmarx Corporation (TIN ending in 7140) ("Hartmarx"), but not including IWA ("2023 Manor Spreadsheet");[3]
- Documentation submitted by FHC to the Class Administrator on September 4, 2024, including:
    - A copy of the 2014 APA;
    - "List of EIN Numbers and DBA's" including Hartmarx, HFC, and IWA;
    - Calculation of Interchange Fees Paid; and
    - transactional data
- Email dated July 1, 2025 from Fair Harbor to Manor;
- Letter from Fair Harbor Doc to Class Administrator dated August 12, 2025, with exhibits including the 2014 APA;
- Emails dated July 1-September 25, 2025 between Fair Harbor and the Class Administrator; and
- Emails dated October 17-20, 2025 between Fair Harbor and the Class Administrator;

---

[3] Hartmarx was the corporate parent of both HFC and IWA, and both subsidiaries were parties to the proceedings arising from Hartmarx's voluntary bankruptcy petition in 2009. *See In re XMH Corp. 1 f/k/a Hartmarx Corp.*, Dkt. No. 09-02046 ("*Hartmarx Bankr.*"), ECF 1 at 4 (N.D. Ill. Jan. 23, 2009) (list of affiliated debtors).

## II. Analysis

HFC and IWA, as subsidiaries of Hartmarx, were among the Debtors involved in Hartmarx's 2009 bankruptcy proceedings. *See Hartmarx Bankr.*, ECF 1 at 4. As a result, their *MDL 1720* damages claims became the property of the bankruptcy estate upon the petition's filing on January 23, 2009. On May 16, 2013, the United States Bankruptcy Court for Northern District of Illinois approved the Third Amended Joint Plan of Liquidation of XMH Corp. 1 (f/k/a Hartmarx Corporation) and Its Affiliated Debtors and Debtors-In-Possession (the "Plan"). *See Hartmarx Bankr.*, ECF 2372 (order); *id*. ECF 2372-1 (Plan). As part of that Plan, the court established the XMH Corp. 1 Liquidation Trust ("XMH Trust"). *See* Plan §§ 7.2, 13.3. Once the Plan took effect, the XMH Trust received all of the bankruptcy estate's right, title and interest in all of the Liquidation Trust Assets, including the Liquidation Trust Claims. *Id*. § 7.2. The Plan defined "Liquidation Trust Claims" to mean "all Causes of Action of the Debtors or the Estates as may further be identified in the Liquidation Trust Agreement, including without limitation the Avoidance Actions." *Id*. § 1.67. The Plan went into effect on June 1, 2014. As a result, the XMH Trust owned the Two Merchants' *MDL 1720* damages claims as of June 1, 2014. The XMH Trust sold those claims to Fair Harbor on December 8, 2014. *See* 2014 APA.

On September 9, 2021, WDG agreed to have Manor serve as its claim-filing agent with respect to the settlement claims it owned in a number of actions, including *MDL 1720*. *See* 2021 Manor Service Agreement at 1, 5. The agreement does not specify the entities whose claims WDG owned. On November 10, 2023, Manor sent the Class Administrator an email with an attached spreadsheet listing its clients and stating that Manor was ready to submit proof of

authorization to act on behalf of each of them. That list listed WDG as the Parent of Hartmarx and HFC (but not IWA). *See* 2023 Manor Spreadsheet.

Manor has never submitted any documents showing when or how WDG came to own the Two Merchants' *MDL 1720* damages claims. Nothing in its submissions (or anything else in the record before me) suggests it ever agreed to serve as the claim-filing agent with respect to IWA's TIN. Nor does anything in the record suggest that Fair Harbor ever lost ownership of the Two Merchants' *MDL 1720* claims after acquiring them in 2014. There is thus nothing in the record to suggest that the parties to the 2021 Manor Service Agreement authorized Manor to register the Two Merchants' TINs. Even if the parties to that agreement thought they were authorizing Manor to do so, nothing in the record suggests that WDG had the right to so empower Manor. I therefore conclude that only Fair Harbor is entitled to register the Two Merchants' TINs.

I do not discount the possibility that Manor may have some enforceable right against WDG or some other party arising out of the 2021 Manor Service Agreement to recover damages proportional to the Two Merchants' recovery. But Manor must assert any such claim against whatever party is liable to it rather than as a direct claim for a portion of the settlement fund. Manor has not mentioned the possibility of any such lawsuit, and I do not address its merits here. Further, I would recommend against adjudicating any such claim within the *MDL 1720* litigation. As this Court has already held, such ancillary claims "do not fall under this Court's retained settlement jurisdiction" but must instead be litigated "in independent lawsuits, outside of MDL 1720." *MDL 1720 Disputes*, 2026 WL 2389790, at *1 (E.D.N.Y. Aug. 17, 2026).

## III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court direct the Class Administrator to process Fair Harbor's registration and withdraw Manor's.

IV. Objections

This Report and Recommendation will be served on Fair Harbor and Manor via the Court's ECF system, and the Class Administrator will also promptly provide a copy to both. Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-03792-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMC-JAM, Doc. 3, ¶ 4.

Dated: September 22, 2026

*/s/ James Orenstein*
Special Master